**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **DENNIS OWEN,** | * |
|     **Plaintiff,** | * |
| v. | *    Case No.: PWG-16-773 |
| **CBRE, INC.,** | * |
|     **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dennis Owen filed suit in state court, alleging that his former employer, Defendant CBRE, Inc. ("CBRE") discriminated against him based on his sexual orientation and then retaliated against him by terminating his employment when he complained of the discrimination, in violation of state and local laws. Compl., ECF No. 2. CBRE removed to this Court, ECF No. 1, and now seeks to arbitrate the claims pursuant to an arbitration provision ("Arbitration Provision") to which Owen purportedly agreed when he entered into a Broker–Salesperson Contract with CBRE after CBRE acquired Owen's previous employer, Trammel Crow Company. Def.'s Mot., ECF No. 9.[1] According to CBRE, Owen's claims fall within the scope of the Arbitration Provision. Because I must treat Defendant's motion to compel arbitration as a motion for summary judgment, and no genuine dispute exists as to the validity or scope of the Arbitration Provision, I will grant the motion, order the parties to proceed to arbitration, and dismiss the case.

---

[1] The parties fully briefed this motion. *See* ECF Nos. 9-1, 21-1 & 27. A hearing is not necessary. *See* Loc. R. 105.6.

**Standard of Review**

CBRE moves to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–15. Congress enacted the FAA "to promote the enforceability of arbitration agreements and to make arbitration a more viable option to parties weary of the ever-increasing 'costliness and delays of litigation.'" *Saturn Distrib. Corp. v. Williams*, 905 F.2d 719, 722 (4th Cir. 1990) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 220 (1985) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. 2 (1924) (quotation marks omitted))). It "reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). If an issue is "'referable to arbitration under an agreement in writing for such arbitration,'" then a stay is mandatory and a motion to compel must be granted. *Id*. (quoting 9 U.S.C. § 3). "Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).[2]

---

[2] The Fourth Circuit has observed that "[t]here may be some tension between [its earlier] decision in *Hooters* [*of America v. Phillips*, 173 F.3d 933 (4th Cir. 1999)]—indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'—and *Choice Hotels*— approving dismissal 'when all of the issues presented . . . are arbitrable.'" *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 (4th Cir. 2012) (declining to resolve dispute). Yet, this Court has noted that, despite the "disagreement within the Fourth Circuit as to if dismissal is appropriate, . . . district courts within the Fourth Circuit have continued to find dismissal appropriate." *Taylor v. Santander Consumer USA, Inc.*, No. DKC 15-0442, 2015 WL 5178018, at *7 (D. Md. Sept. 3, 2015) (dismissing case where all issues were arbitrable), *appeal dismissed* (Apr. 22, 2016); *see, e.g.*, *SC&H Grp., Inc. v. Altus Grp. U.S., Inc.*, No. WMN-16-1037, 2016 WL 3743055, at *4 (D. Md. July 13, 2016) (dismissing case where all issues were arbitrable); *Doe v. New Ritz, Inc.*, No. RDB-14-2367, 2016 WL 1642933, at *5 (D. Md. Apr. 26, 2016) (same); *Bey v. Midland Credit Mgmt., Inc.*, No. GJH-15-1329, 2016 WL 1226648, at *5 (D. Md. Mar. 23, 2016) (same).

Relevantly, "'even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.'" *Adkins*, 303 F.3d at 501 (quoting *Arrants v. Buck,* 130 F.3d 636, 640 (4th Cir. 1997)). Here, Owen challenges the very existence of the Arbitration Provision, rather than its scope. *See* Pl.'s Opp'n 4. As both parties acknowledge, when a party moves to compel arbitration and the validity of the purported arbitration agreement between the parties is disputed, the motion is treated as one for summary judgment. *See Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011); *see also id.* at 252 n.5 ("If the parties dispute the existence of an arbitration agreement, the court must 'hear the parties' on the issue, and the party alleged to have violated the arbitration agreement is entitled to a jury trial on the existence of an agreement. Standard summary judgment rules apply." (quoting 9 U.S.C. § 4 and citing *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 684 n.1 (D. Md. 2004))). Therefore, I will treat CBRE's motion as one for summary judgment on the validity and enforceability of the Arbitration Provision. *See id.*

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a summary

judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999).

The question here is "whether a contract to arbitrate was formed," and "unless there is no genuine issue of fact as to whether a contract was formed, the court must submit the question to the jury." *Galloway v. Santander Consumer USA, Inc.*, No. CCB-13-3240, 2014 WL 4384641, at *2 (D. Md. Sept. 3, 2014). To determine whether an arbitration agreement exists, "[c]ourts apply 'ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 607 (4th Cir. 2013) (internal quotation marks and citations omitted)). In support of its motion, CBRE attaches the Broker–Salesperson Contract between the parties, which includes the Arbitration Provision at issue. Broker–Salesperson Contract ¶ 18, ECF No. 9-2. Thus, the burden is on Owen to show that a genuine dispute exists regarding the validity or enforceability of this written agreement. *See Matsushita*, 475 U.S. at 585–87 & n.10.

## Discussion

An arbitration agreement only "is enforceable if it is a valid contract." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 591 (D. Md. 2013) (citing *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540 (4th Cir. 2005)). Further, "'the presumption in favor of arbitration does not apply to questions of an arbitration provision's validity, rather than its scope.'" *Id.* at 593 (quoting *Noohi v. Toll Brothers, Inc.*, 708 F.3d 599, 611 n.6 (4th Cir. 2013)). "Courts apply 'ordinary state-law principles that govern the formation of contracts when assessing whether the

parties agreed to arbitrate a matter.'" *Galloway v. Santander Consumer USA, Inc.*, No. CCB-13-3240, 2014 WL 4384641, at *2 (D. Md. Sept. 3, 2014) (quoting *Noohi*, 708 F.3d at 607 (internal quotation marks and citations omitted)). Additionally, "'generally applicable contract defenses, such as fraud, duress, [and] unconscionability, may be applied to invalidate' the arbitration policy." *Mould v. NJG Food Serv. Inc.*, 986 F. Supp. 2d 674, 678 (D. Md. 2013) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Owen insists that the Arbitration Provision is not a valid contract and, in any event, is unconscionable. Pl.'s Opp'n 4, 8.

### Validity

A contract exists under Maryland law[3] where there is "'mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)). Thus, "[a]s with any contract, the arbitration provision must be supported by adequate consideration in order to be valid and enforceable." *Caire*, 982 F. Supp. 2d at 591; *see Raglani v. Ripken Prof'l Baseball*, 939 F. Supp. 2d 517, 522 (D. Md. 2013) ("Arbitration agreements, like all contracts, 'ordinarily require consideration.'" (quoting *Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003))). Significantly, the "arbitration agreement must, within its four corners, contain adequate consideration," as "courts are not permitted, when assessing the enforceability of an arbitration agreement, 'to go beyond the confines of the arbitration agreement itself and into an analysis of the validity of the larger contract.'" *Id.* (quoting *Cheek*, 835 A.2d at 664).

The Arbitration Provision at issue provides:

---

[3] The parties agree that Maryland law applies. *See* Def.'s Mem. 5; Pl.'s Opp'n 4.

> In the event of any dispute or claim between Salesperson and Broker . . . , but *excluding any dispute which Broker is authorized to resolve pursuant to any other provision contained in this or any other contract with Broker (including but not limited to paragraph 11, above) or Broker's General Rules & Policies (including but not limited to Section 10.11)*, Salesperson and Broker jointly agree to submit all such disputes or claims to confidential binding arbitration and waive any right to a jury trial.  The claims and disputes subject to arbitration include all claims arising from or related to Salesperson's employment or the termination of Salesperson's employment, including but not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, or medical condition or disability); claims for benefits (except where an employee benefit or pension plan specifies  that its claims procedure shall culminate in an arbitration procedure different from this one); and claims for violations of any federal, state, or governmental law, statute, regulation, or ordinance. . . .

Broker–Salesperson Contract ¶ 18 (emphasis added).  As Owen sees it, the Arbitration Provision, in the language italicized above, "reserves to CBRE so many exceptions to the ostensible joint commitment to arbitrate disputes as to render CBRE's promise illusory and Owen's obligation one-sided," and a result, it lacks consideration and simply is not an enforceable agreement to arbitrate.  Pl.'s Opp'n 4.  CBRE counters:

> Careful examination of this provision demonstrates that Paragraph 11 does not serve to negate the consideration that is clearly provided through the arbitration clause itself. Rather, through Paragraph 11, Defendant merely reserved unto itself discretion concerning how to resolve potential disputes between Plaintiff and third parties, whether such involved another broker or another Salesperson. Additionally, pursuant to Policy 10.5 section G of the Broker's General Rules & Policies, Defendant reserved discretion to have sole and exclusive jurisdiction to resolve commission-based disputes, which is fully consistent with the aforementioned provision concerning the discretion of how to resolve disputes between Plaintiff and third parties.
>
> In other words, Defendant and Plaintiff mutually agreed to arbitrate all claims *between Defendant and Plaintiff*, with the exception of any disputes between Plaintiff and any third-party, as well as, commission-based disputes.

Def.'s Reply 3.

"[T]he mutual exchange of promises to arbitrate disputes represent[s] the necessary consideration in support of an arbitration agreement." *Caire v. Conifer Value Based Care, LLC*,

982 F. Supp. 2d 582, 591–92 (D. Md. 2013) (citing *Cheek*, 835 A.2d at 665, 669). "Mutuality . . . does not require an exactly even exchange of identical rights and obligations between the two contracting parties before a contract will be deemed valid." *Walther v. Sovereign Bank*, 872 A.2d 735, 748 (Md. Ct. Spec. App. 2005). Indeed, "[i]t is well settled that the Courts of Law . . . will not inquire into the adequacy of the value exacted for the promise so long as it has some value." *Id.* (quoting *Harford Cnty. v. Town of Bel Air*, 704 A.2d 421, 431 (Md. 1998) (quoting *Blumenthal v. Heron*, 274 A.2d 636, 640 (Md. 1971))). And, this Court has observed that "arbitration agreements that more frequently bind the employee than the employer are valid despite the differences in the parties' rights." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 259 (D. Md. 2011).

Nonetheless, mutuality does require that each party exchange a "binding obligation," not simply an "illusory promise" that "'appears to be a promise, but … does not actually bind or obligate the promisor to anything.'" *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (quoting *Cheek v. United Healthcare of Mid–Atl., Inc.*, 835 A.2d 656, 662 (Md. 2003)). "Where a party reserves the right to 'alter, amend, modify or revoke' an arbitration agreement, the promise to arbitrate is illusory and the arbitration agreement is unenforceable for lack of consideration." *Caire*, 982 F. Supp. 2d at 593–94 (quoting *Cheek*, 835 A.2d at 662, 669). "Because an illusory promise is not binding on the promisor, an illusory promise cannot constitute consideration." *Hill*, 412 F.3d at 543.

Owen challenges whether CBRE made any promises in the Arbitration Provision. He argues that the Arbitration Provision lacks consideration because the disputes subject to arbitration are "overwhelmingly . . . the kinds of claims an employee would bring against an employer, such as claims for wages, benefits and discrimination," rather than claims that an

7

employer would bring against an employee. Pl.'s Opp'n 6. In his view, the language of the Arbitration Provision "reveals an apparent intention to establish a one-way obligation to arbitrate the Salesperson's (Owen's) claims," without "*clearly* contemplat[ing] arbitration of most or all of the claims that Broker (CBRE) might have against the Salesperson (Owen)." *Id.* at 7. Owen relies on *Noohi v. Toll Bros., Inc.*, 708 F.3d 599 (4th Cir. 2013).

In *Noohi*, the disputed arbitration provision provided:

> 13. ARBITRATION: *Buyer*, on behalf of *Buyer*, and all permanent residents on the Premises, including minor children, *hereby agree* that any and all disputes with Seller, Seller's parent company or their subsidiaries or affiliates arising out of the Premises, this Agreement, the Home Warranty, any other agreements, communications or dealings involving Buyer, or the construction or condition of the Premises including, but not limited to, *disputes concerning breach of contract, express and implied warranties, personal injuries and/or illness, mold related claims, representations and/or omissions by Seller, on-site and off-site conditions and all other torts and statutory causes of action* ("Claims") shall be resolved by binding arbitration in accordance with the rules and procedures of Construction Arbitration Services, Inc. ("CAS") or its successor or an equivalent organization mutually agreed upon by the parties. If CAS is unable to arbitrate a particular claim, then that claim shall be resolved by binding arbitration pursuant to the Construction Rules of Arbitration of the American Arbitration Association or its successor or an equivalent organization mutually agreed upon by the parties. In addition, *Buyer agrees* that *Buyer* may not initiate any arbitration proceeding for any Claim(s) unless and until *Buyer* has first *given Seller specific written notice* of each claim . . . and given Seller a reasonable opportunity after such notice to cure any default, including the repair of the Premises in accordance with the Home Warranty. . . .
>
> ***BUYER HEREBY WAIVES THE RIGHT* TO A PROCEEDING IN A COURT OF LAW (INCLUDING WITHOUT LIMITATION A TRIAL BY JURY) FOR ANY CLAIMS OR COUNTERCLAIMS BROUGHT PURSUANT TO THIS AGREEMENT. THE PROVISIONS OF THIS SECTION SHALL SURVIVE SETTLEMENT.**

708 F.3d at 609–10 (quoting arbitration provision) (emphasis added). The Fourth Circuit concluded that the language of the arbitration provision before it was unambiguous and "agree[d] with the district court that the provision [bound] only Plaintiffs to arbitration, and thus lack[ed] mutuality of consideration." *Id.* at 610. The appellate court reasoned in part that "all the subject

and verb pairings relate to the buyer's obligations (i.e., buyer agrees, buyer waives, etc.); nowhere does the provision state that 'Buyer and Seller agree,' or the passive 'it is agreed'"; "the provision add[ed] additional procedures that only the buyer must perform prior to initiating arbitration, such as giving the seller written notice of each claim and an opportunity to cure any default"; and "only the buyer, but not the seller, waive[d] the right to a court proceeding." *Id.* at 610–11. Here, in contrast, the parties "*jointly agree[d]* to submit all such disputes or claims to confidential binding arbitration and waive[d] any right to a jury trial." Broker–Salesperson Contract ¶ 18 (emphasis added).

In *Noohi*, the Fourth Circuit also observed that "all the types of claims given as examples in the provision are claims that the buyer would bring against the seller." 708 F.3d at 611. Here, the majority of the examples of claims, similarly, are claims that Owen would bring against CBRE, such as claims for wages, benefits, or discrimination. *See* Broker–Salesperson Contract ¶ 18. But, not "*all* the types of claims given as examples" are claims that only Owen would bring. *See Noohi*, 708 F.3d at 611 (emphasis added). Rather, "claims for breach of any contract or covenant" are subject to arbitration. *See* Broker–Salesperson Contract ¶ 18. The Broker–Salesperson Contract includes confidentiality provisions and a covenant not to compete. *See id.* ¶ 17A–C. Thus, if CBRE sought to sue Owen for breach of the confidentiality provisions or for soliciting its clients or employees, CBRE's claims would be subject to arbitration. *See id.* Consequently, even if the promises are not "exactly even," *see Walther*, 872 A.2d at 748, the Arbitration Provision is not one sided and there is a mutual exchange of promises here, unlike in *Noohi*. This mutual, albeit perhaps uneven, exchange suffices for consideration in support of a valid agreement. *See Rose*, 816 F. Supp. 2d at 259; *Walther*, 872 A.2d at 748.

Owen also contends that the Arbitration Provision "reserves to CBRE so many exceptions . . . as to render CBRE's promise illusory." Pl.'s Opp'n 4.  It is true that Paragraph 18 carves out some exceptions.  Yet Owen does not offer any evidence of exceptions to show that they are so extensive so as to prevent CBRE from being bound to arbitrate.  Nor does he seek such discovery pursuant to Rule 56(d).  Moreover, CBRE only may avoid arbitration with regard to disputes that it "is authorized to resolve pursuant to any other provision."  And, CBRE does not "reserve[] the right to 'alter, amend, modify or revoke'" the Arbitration Provision.  *See Caire*, 982 F. Supp. 2d at 593–94 (quoting *Cheek*, 835 A.2d at 662, 669).  Thus, CBRE does not have unbridled discretion to avoid arbitration.  On the record before me, there is no genuine dispute that the Arbitration Provision is not illusory.  Consequently, Owen has not met his burden, and CBRE is entitled to judgment in its favor on this issue.  *See Matsushita*, 475 U.S. at 585–87 & n.10; Fed. R. Civ. P. 56(a).

## Unconscionability

"[T]he question of whether a contract is unconscionable is a question of law." *Doyle v. Fin. Am., LLC*, 918 A.2d 1266, 1278 (Md. Ct. Spec. App. 2007).  Under Maryland law, an unconscionable contract is "one 'characterized by "extreme unfairness," which is made evident by "(1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party."'" *Mould*, 986 F. Supp. 2d at 678 (quoting *Walther v. Sovereign Bank*, 872 A.2d 735, 743–44 (Md. 2005) (quoting *Black's Law Dictionary* 1560 (8th ed. 2004))).  Thus, the contract defense of unconscionability applies only if a contract is "*both* procedurally *and* substantively unconscionable." *Id.* (emphasis added); *see Stewart v. Stewart*, 76 A.3d 1221, 1232 (Md. Ct. Spec. App. 2013) ("The prevailing view is that both procedural and substantive unconscionability must be present in order for a court to invalidate a contractual term as

unconscionable.") (quoting *Freedman v. Comcast Corp.*, 988 A.2d 68, 85 (Md. Ct. Spec. App. 2010)).

Procedural unconscionability "deals with the process of making a contract" and "looks much like fraud or duress in contract formation." *Falls v. 1CI, Inc.*, 57 A.3d 521, 534 (Md. Ct. Spec. App. 2012) (quoting *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 n.12 (4th Cir. 1989)). It "relates to procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter the transaction." *Id.* at 533 (quoting 8 Richard A. Lord, *Williston on Contracts* § 18:10 (4th ed. 1998)). "Substantive unconscionability involves those one-sided terms of a contract from which a party seeks relief" and "reminds us of contracts or clauses contrary to public policy or illegal." *Id.* at 533–34 (quoting *Carlson*, 883 F.2d at 296 n.12).

Owen argues that the Arbitration Provision is procedurally unconscionable because it is a contract of adhesion and "CBRE did not specifically bring the arbitration provision to Mr. Owen's attention, despite specifically pointing out other important provisions in the employment agreement and having Mr. Owen specifically acknowledge those other provisions." Pl.'s Opp'n 8. Yet, "not every contract of adhesion is procedurally unconscionable. '[T]he fact that a contract is one of adhesion does not mean that it is automatically deemed per se unconscionable. Rather, "[a] court will . . . look at the contract and its terms with some special care . . . .""" *Sedelnikova v. The Cheesecake Factory Rest., Inc.*, No. AW-09-2398, 2010 WL 2367387, at *6 (D. Md. June 7, 2010) (quoting *Dieng v. College Park Hyundai*, No. DKC-09-68, 2009 WL 2096076, at *6 (D. Md. July 9, 2009) (quoting *Walther*, 872 A.2d at 746)). And, while it is true that the typeface of the Arbitration Provision at issue is not distinct from the rest of the contract,

and the provision is not separately initialed, unlike other clauses in the contract, Owen has not shown that this fact alone renders it unconscionable. Rather, "the law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms." *Walther*, 872 A.2d at 745 (quoting *Merit Music Service, Inc. v. Sonneborn*, 225 A.2d 470, 474 (Md. 1967)). And where, as in this case and as in *Walther*, "the arbitration clause is placed *directly above* [the complainants'] signatures," the placement "weaken[s] any argument that [the complainants] were not aware of its existence because it was buried somewhere within a voluminous contract." *Id.* (emphasis in original).

Moreover, the Arbitration Provision is not substantively unconscionable, which is sufficient grounds to defeat Owen's unconscionability argument. *See Mould*, 986 F. Supp. 2d at 678; *Walther*, 872 A.2d at 746–47 ("[E]ven assuming *arguendo* that the Disclosure Agreement signed by petitioners is in fact a contract of adhesion, that is not the end of the inquiry—we must examine the *substance* of the particular provision at issue, the arbitration clause, to decide whether it is unconscionable." (footnote omitted)); *Stewart*, 76 A.3d at 1232. To determine whether the Arbitration Provision is substantively unconscionable, I "must consider whether the terms in the arbitration clause are so one-sided as to oppress or unfairly surprise an innocent party or whether there exists an egregious imbalance in the obligations and rights imposed by the arbitration clause." *Walther*, 872 A.2d at 747; *see Shih Ping Li v. Tzu Lee*, 62 A.3d 212, 227–28 (Md. Ct. Spec. App. 2013) (same), *aff'd*, 85 A.3d 144 (2014).

> Substantively unconscionable terms are "unreasonably favorable to the more powerful party," "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy," "attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law," or are otherwise "unreasonably and unexpectedly harsh."

*Freedman*, 988 A.2d at 85–86 (quoting *Walther*, 872 A.2d at 744 (quoting *Williston on Contracts* § 18:10)).

Owen insists that the Arbitration Provision is unconscionable because its terms "are not mutually co-extensive" and "they insufficiently define the rules by which the arbitrator will be selected and by which the arbitration will be conducted." Pl.'s Opp'n 9. With regard to whether the terms are one-sided or unbalanced, Owen contends that the Arbitration Provision "unreasonably favors CBRE by permitting it broad exemptions to the ostensibly joint obligation to arbitrate disputes." *Id.* CBRE does not address this argument in terms of unconscionability, providing only its analysis regarding the validity of the arbitration provision, in which CBRE asserted that "identical obligations are not required for mutuality." Def.'s Reply 4.

*Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245 (D. Md. 2011), is informative. There, the plaintiffs argued that the arbitration agreement at issue "unreasonably favor[ed] New Day because of the lack of mutuality in court access," asserting that "the agreement allow[ed] New Day to file 'many types of actions' in court while the Plaintiffs ha[d] no equivalent exceptions to the arbitration requirement." *Id.* at 258–59. The Court observed, as I have, that "[m]utuality 'does not require an exactly even exchange of identical rights and obligations' between the parties," and that "arbitration agreements that more frequently bind the employee than the employer are valid despite the differences in the parties' rights." *Id.* at 259 (quoting *Walther*, 872 A.2d at 748). Noting that "[t]he FAA mandates that 'courts cannot treat arbitration in general as an inferior or less reliable means of vindicating important substantive rights,'" the Court stated that "arbitration is not inferior to the courtroom." *Id.* The Court concluded that the fact "[t]hat an agreement restricts a party's access to a court does not make it unfair," and it

enforced the agreement as not "substantively unreasonable." *Id.* (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501–03 (4th Cir. 2002)).

Here, as noted, there are exceptions to CBRE's obligation to arbitrate, such that Owen is bound to arbitrate a greater variety of potential disputes than CBRE. But, "arbitration is not inferior to the courtroom," and therefore, the greater extent of Owen's obligation to arbitrate is not unfair, unreasonable, oppressive, or egregious. *See id.*

As for the terms describing the procedure for arbitration, Owen relies on *Raglani v. Ripken Prof'l Baseball*, 939 F. Supp. 2d 517, 522 (D. Md. 2013), in which, according to Owen, this Court found that "allowing the employee to pick from a list of arbitrators provided by the employer was actually not a sufficient term for choosing a neutral arbitrator." Pl.'s Opp'n 9. CBRE counters that "Plaintiff's position is contrary to well-established case law," because "[t]he U.S. Supreme Court's decision in *Green Tree Financial Corporation-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) instructs that an 'arbitration agreement's silence' with respect to arbitration terms and procedures, standing alone, 'is plainly insufficient to make the arbitration agreement unenforceable.'"[4] Def.'s Reply 10. CBRE asserts that "the FAA allows courts, upon motion of either party, to appoint an arbitrator when the agreement to arbitrate fails to include a method of selection." *Id.* (citing 9 U.S.C. § 5). CBRE differentiates *Raglani*. *Id.* at 10–11.

In *Raglani*, the arbitration agreement between the employer and employee provided that the employer would "provide a list" of impartial arbitrators, and the employee, who had "exclusive control over the list," would select an arbitrator from the list. 939 F. Supp. 2d at 524. Although this approach purportedly ensured that arbitration "involved an impartial external third

---

[4] The *Green Tree* holding pertained specifically to an arbitration agreement's "silence with respect to costs and fees"; the Supreme Court concluded that "an arbitration agreement's silence with respect to such matters does not render the agreement unenforceable." 531 U.S. at 82, 91.

party," the Court concluded that "simply promising to provide a list of impartial arbitrators, without providing a mechanism by which the selection of an impartial arbitrator will actually be ensured, [was] insufficient" to ensure a neutral forum, given that the "employee's choice [was] entirely circumscribed by the list [the employer] provide[d]." *Id.* The Court found that the agreement was not enforceable, in part because "an employer may not 'provid[e] itself with the exclusive right to select the list of potential arbitrators from which the ultimate decisionmaker will be selected,'" and "where an arbitration agreement contains provisions that deny one party access to a neutral, arbitral forum, those provisions may make the agreement unenforceable." 939 F. Supp. 2d at 523 (quoting *Murray v. United Food & Commercial Workers Int'l Union, Local 400*, 289 F.3d 297, 303 (4th Cir. 2002)).

The Court also concluded that the arbitration provision, which stated that the FAA would provide the rules of arbitration, did not "provide sufficient rules by which arbitration will be conducted." *Raglani*, 939 F. Supp. 2d at 525. It reasoned that, while the provision with its reference to the FAA "may have been sufficiently enforceable if the rest of the agreement were valid, the lack of any neutral arbitrator selection mechanism, combined with this vagueness, cast[] serious doubt that the agreement would guarantee a fair process by which to arbitrate Raglani's claims." *Id.* The reference to FAA rules was "not necessarily an independent basis to invalidate the agreement," but was "certainly . . . a reason to question its enforceability, when combined with [the employer's] exclusive control over the list of arbitrators." *Id.*

Here, the Arbitration Provision provides:

> The arbitration (i) shall be conducted pursuant to the provisions of the arbitration rules of the state in which Salesperson is or was last employed by CB Richard Ellis (e.g., in California, the California Arbitration Act) or in the absence of state law, the Federal Arbitration Act; and (ii) shall be heard before a retired State or Federal judge in the county containing Broker's office in which Salesperson was

15

> last employed. Broker shall pay for all fees and costs of the Arbitrator, however, each party shall pay for its own costs and attorneys' fees, if any.

Broker–Salesperson Contract ¶ 18 (emphasis added). Thus, it does not provide CBRE with "the exclusive right to select the list of potential arbitrators from which the ultimate decisionmaker will be selected." *See Raglani*, 939 F. Supp. 2d at 523 (quoting *Murray*, 289 F.3d at 303). And, the FAA only provides the rules "in the absence of state law." Broker–Salesperson Contract ¶ 18. Moreover, reliance on FAA rules is "not necessarily an independent basis to invalidate the agreement," given that it otherwise is valid. *See Raglani*, 939 F. Supp. 2d at 525; *see also Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2001) (relying on *Green Tree*, 531 U.S. 79, to "conclude that the district court erred in finding that the arbitration agreement was unconscionable because of unknown cost, fees, and procedures"; noting that "*Hooters of America v. Phillips*, 173 F.3d 933 (4th Cir. 1999), provides guidance on the limited circumstances in which a court may find an arbitration agreement unconscionable," such as where, as in *Hooters*, the employer promulgated "a multitude of biased and warped rules . . . which essentially created a 'sham [arbitration] system'"). Consequently, there is no genuine dispute that the Arbitration Provision is enforceable. Once again, Owen failed to meet his burden, and CBRE is entitled to judgment in its favor on this issue as well. *See Matsushita*, 475 U.S. at 585–87 & n.10; Fed. R. Civ. P. 56(a).

## **ORDER**

Accordingly, it is, this 2nd day of December, 2016, hereby ORDERED that

1. Defendant's Motion for Order Compelling Arbitration and Dismissing Plaintiff's Complaint, or in the Alternative, Staying Proceedings, ECF No. 9, treated as a motion for summary judgment on the validity and enforceability of the Arbitration Provision, IS GRANTED as follows:

    a. The parties SHALL PROCEED to arbitration on Plaintiff's claims; and

    b. Plaintiff's Complaint IS DISMISSED; and

2. The Clerk SHALL CLOSE this case.

                                                                                             /S/
                                                                                Paul W. Grimm
                                                                                United States District Judge

lyb